

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-14-2002

# USA v. Lessane

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3100

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Lessane" (2002). *2002 Decisions.* Paper 501.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/501

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 01-3100
_____

UNITED STATES OF AMERICA

v.

CHARLES MICHAEL LESSANE;
a/k/a Michael Lessane

Charles Michael Lessane,
                         Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 00-cr-00315)
District Judge: Honorable Yvette Kane
_____

Argued June 14, 2002

Before: ROTH, RENDELL, and ROSENN, Circuit Judges

(Filed : August 14, 2002)


Daniel I. Siegel, Esq.     [ARGUED]
Office of Federal Public Defender
Suite 306
100 Chestnut Street
Harrisburg, PA  17101
    Counsel for Appellant


Theodore B. Smith, III, Esq. [ARGUED]
William A. Behe, Esq.
Office of United States Attorney
Federal Building, Suite 220
228 Walnut Street
P. O. Box 11754
Harrisburg, PA   17108
    Counsel for Appellee
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.
      Michael Lessane appeals from the District Court's Judgment and Commitment
Order, challenging two aspects of his sentencing:  (1) the loss calculation, and (2) the
District Court's failure to depart downward in order to credit certain time served in York
County prison.  Since we agree with Lessane's first argument, we will remand for re-

sentencing using the proper loss amount.  We will not disturb the District Court's conclusion that it did not intend to grant Lessane a downward departure.

The District Court had jurisdiction pursuant to 18 U.S.C.  3231 and we have jurisdiction under 18 U.S.C.  1291 and 18 U.S.C.  3742(a).  Our review of the District Court's interpretation of "loss" is plenary, while we review the Court's factual determinations for clear error.  See, e.g., United States v. Evans, 155 F.3d 245, 252 (3d Cir. 1998).  Because Lessane "challenge[s] the district court's interpretation of the 'loss' concept" here, our review is plenary.  United States v. Daddona, 34 F.3d 163, 170 (1994).

Lessane was charged with the illegal distribution of prescription drugs without a license during the time period from February 1, 1996, up to and including August 25, 1999.  He pled guilty and was released on bond pending sentencing.  At the same time, he was returned to York County Prison, where he was being held on related state charges for having failed to deliver certain drugs to Apple Hill Surgical Center.

Lessane indicated that he had received the drugs from "a guy" who worked for McKinnon Distributors, in Maryland, who was supplying them to Lessane from "overstock."  Lessane indicated he sold about $70,000 worth of drugs and made a profit of around $35,000.  He failed to deliver certain drugs to Apple Hill that were worth approximately $1,200.  Otherwise, it appears that the customers who purchased from him did receive the drugs that they had requested from him.

The Presentence Investigation Report ("PSI") recommended a base offense level of 6, based upon a loss calculation under section 2F1.1 of the guidelines for less than $2,000 in victim loss, namely, Apple Hill's loss of $1,200.  Every purchaser from Lessane, other than Apple Hill, received what they had bargained for, so that $1,200 was the amount of loss for purposes of sentencing.  The PSI also recommended a two-level enhancement because the offense involved more than minimal planning, resulting in a total offense level of 8.

At sentencing, the government argued that since Lessane procured the drugs illicitly, the full value of the drugs was the amount of the loss.  Lessane's counsel argued, on the other hand, that under the guidelines the loss can be estimated with certainty, namely, $1,200, and that is the amount of loss provided for, because everyone other than Apple Hill received what they had paid for.

The District Court heard argument from the government with respect to the circumstances of the pilfering of drugs from McKinnon Distributors, and because McKinnon's loss could not be determined, the District Court reasoned:

> So I think . . . if we can't ascertain with any degree of confidence the measure of the loss, then we go and say, "Well then, what did the defendant gain?"  And this defendant says he gained $35,000.  So at a minimum, we're looking at a $35,000 assessment.

On appeal, Lessane asserts that the loss was $1,200, and also that even if the loss to McKinnon should be considered, the issue here is not whether that amount can be estimated, but, rather, that the government failed to prove a loss in an amount any greater than $1,200.

Notwithstanding the apparent confusion at the sentencing hearing with respect to the amount of the loss, we view the situation as rather straightforward.  The offense of conviction was the illegal distribution of prescription drugs without a license.  There was no charge or allegation of conspiracy with "the guy" from McKinnon who took the drugs, so it is Lessane's offense, and his conduct of illegally selling the drugs, that are the basis for the loss calculation under section 2F1.1.  See United States v. Dickler, 64 F.3d 818 (3d Cir. 1995).  We will concern ourselves, accordingly, with the amount of loss experienced by Lessane's victims, who were the victims of his illegal sale offense.  While it is tempting to look at the loss to one or more drug distributors, that loss was not occasioned by anything that Lessane did, but, rather, by the theft committed by "the guy" from whom Lessane purchased them.  Again, Lessane's conduct and offense were his own distribution, not the apparent theft of the drugs from the manufacturer.

We have said that the calculation of loss depends upon an assessment of whether value has passed:

> In applying this flexible, fact-driven concept of loss, we have

thus held that in situations where value passes in only one
direction   from the victim to the perpetrator   the
perpetrator's gain will normally reflect the victim's loss.  On
the other hand, where value passes in both directions, we
have held that the victim's loss will normally be the
difference between the value he or she gave up and the value
he or she received (or, if greater, the difference between what
the perpetrator intended the victim to give up and to receive).

Dickler, 64 F.3d at 825.

Had the government argued or shown that the drugs received by the various
purchasers from Lessane were somehow adulterated or not worth the money paid for
them, the loss calculation might produce a different result (if, for instance, it was not
feasible to estimate the difference in value, and, therefore, the victim's loss).  In that
instance, where the loss cannot be estimated, gain can be used where it "reasonably
serve[s] as a surrogate" for the loss.  Id. at 826.  However, here, there was no allegation
that the drugs sold were worth less than was paid for them.  Accordingly, the loss was, as
the Presentence Report indicated, $1,200, and the offense level should have been 8,
rather than 12.

Lessane also challenges the District Court's determination that it would not depart
downward to give credit for time served in the York County Prison.  At the end of the
sentencing hearing, Lessane's counsel indicated that there was another issue just brought
to his attention, namely, "the credit for the four months he served at York County
Prison."  The District Court Judge replied, "He will receive credit for that," leading both
counsel to believe that the sentence imposed would be reduced by that amount.
However, when that reduction was not reflected in the Judgment and Commitment
Order, Lessane's counsel requested clarification; the Judge replied in a letter that it was
her intention to make that recommendation to the Bureau of Prisons, but it was not her
intention to depart downward by four months.  Since the Bureau of Prisons had, under its
regulations, denied the credit, the District Court refused to adjust the sentence further.

The District Court Judge did clarify her meaning, and in so doing, explained what
she had meant by her indication at sentencing that she would give credit for time served.
While both parties thought that the sentence would be reduced, we do note that the
concept of "credit" is not the same as "departure," so there was no actual indication from
the Judge that she would grant a departure.  Further, "credit for time served" is typically
awarded by the Bureau of Prisons, not by a judicial officer.  At no time did counsel
request a departure, nor did the District Court ever indicate that it would depart if the
"credit" was not, for some reason, given.  We will not disturb the District Court's ruling,
based on the Judge's explanation that she intended to recommend a credit to be given to
the extent allowed by the Bureau of Prisons.  We accept the sentencing court's view of
what was intended and, on remand, no departure is warranted.

The existing record should be the basis for re-sentencing on remand.  "[W]here
the government has the burden of production and persuasion as it does on issues like
enhancement of the offense level under   2F1.1 based on the victim's loss, its case
should ordinarily have to stand or fall on the record it makes the first time around."
Dickler, 64 F.3d at 832.  Although we might allow the government the opportunity to
present additional evidence if fairness so required, see id., that is not the case here.

Accordingly, we will VACATE the Judgment and Commitment Order and
REMAND to the District Court with instructions that Lessane be re-sentenced on the
existing record using an offense level of 8, rather than the offense level of 12 that was
the basis for the sentence under the Judgment and Commitment Order.

_____

TO THE CLERK OF COURT:
Please file the foregoing Not Precedential Opinion.

/s/ Marjorie O.
Circuit Judge