**UNITED STATES of America**

v.

**Benjamin WARNER, Appellant.**

No. 07–3816.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 20, 2008.

Filed July 17, 2009.

---

George S. Leone, Esq., Scott McBride, Esq., Office of United States Attorney, Newark, NJ, for Appellee.

David W. Fassett, Esq., Arseneault, Whipple, Farmer, Fassett & Azzarello, Chatham, NJ, for Appellant.

Before: BARRY and CHAGARES, Circuit Judges, and RESTANI,* Judge.

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

Benjamin Warner appeals from a judgment of sentence upon conviction for one count of mail fraud pursuant to 18 U.S.C. § 1341. We will affirm.

## I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts.

Warner was a financial analyst for the Robert Wood Johnson Foundation (RWJF), a private charity. RWJF has a policy of matching its employees' donations to other charities, sometimes contributing as much as five times what the employee gave. Warner discovered this policy and exploited it to his calculated advantage.

Warner, along with other employees using money he fronted to them, would make donations to various charities and apply to RWJF for matching funds. RWJF would then contribute to each of those charities five times the donated amount. However, Warner arranged for the charities to kick-back to him a portion of those matching funds. To keep up appearances and decrease the chance of getting caught, Warner interspersed these fraudulent donations with legitimate charitable contributions that did not generate kickbacks. All told, Warner's scheme caused RWJF to pay out $324,875 in matching funds. Warner pocketed at least $70,000 of those funds.

Warner pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. At sentencing, the District Court held that RWJF's "loss" was the entire amount of its $324,875 payout (rather than some lesser amount such as the $70,000 actually pocketed by Warner). This yielded an advisory range of 24 to 30 months of incarceration. The District Court sentenced

---

* Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

Warner to 24 months' imprisonment and three years' supervised release. The District Court also ordered Warner to make restitution to RWJF in the amount of $324,875. It set a payment schedule of $1,000 per month during Warner's incarceration and required Warner to pay the balance by the end of his first year of supervised release.

Warner now appeals from this judgment of sentence.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

We exercise plenary review of the District Court's interpretation of the legal meaning of "loss" under U.S. Sentencing Guidelines § 2B1.1 (2002).[1] *United States v. Evans,* 155 F.3d 245, 252 (3d Cir.1998). We review the District Court's factual determination of the loss amount for clear error. *United States v. Vitillo,* 490 F.3d 314, 330 (3d Cir.2007).

Section 2B1.1 provides a 12–level enhancement from the base offense level if the "loss" is greater than $200,000 and less than or equal to $400,000, where "loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." § 2B1.1(b)(1)(G) & cmt. n. 2(A)(i) (2002). "Reasonably foreseeable pecuniary harm" means "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." § 2B1.1 cmt. n. 2(A)(iv) (2002). It also includes losses to the victim generated by all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by

the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

§ 1B1.3(a)(1) (2002) (defining relevant conduct for sentencing purposes). The Guidelines further instruct that "[t]he court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." § 2B1.1 cmt. n.2(C) (2002).

■ Warner was convicted of mail fraud for inducing RWJF to pay $324,875 in what it thought were pure charitable contributions but in what ended up including more than $70,000 in kickbacks to Warner personally. He argues that the District Court erred in using RWJF's full $324,875 payout as the § 2B1.1 loss amount, thereby arriving at an advisory range of 24 to 30 months of imprisonment. This argument is unpersuasive.

First, Warner argues that some of the donations that generated the $324,875 payout do not qualify as relevant conduct for sentencing purposes. Therefore, the argument continues, the matching funds traceable to those donations should be excluded from the total loss amount. Warner is mistaken. All of the donations at issue constitute relevant conduct for sentencing purposes. Those donations that actually triggered kickbacks constitute the primary conduct—the fraudulent scheme—for which Warner was convicted. And Warner admitted that the donations that did not trigger kickbacks were nevertheless made "[t]o further execute the scheme"

---

1. The District Court and the parties all appear to have proceeded on the assumption that the

2002 edition of the U.S. Sentencing Guidelines applies in this case.

248

even if, standing alone, they would not have implicated 18 U.S.C. § 1341. Appendix (App.) A34–A39 (transcript of allocution during guilty plea hearing); § 1B1.3(a)(1)(A) (2002).

Second, Warner argues that even if all of the donations qualify as relevant sentencing conduct, the $324,875 loss should be reduced by the amount actually retained by the charities (and not kicked back to Warner) and used for charitable purposes. This argument, too, is unavailing. A victim's loss will count against the defendant at sentencing if it would not have occurred but for the fraud.[2] There is no evidence here that, had Warner not solicited employee donors, fronted money, and made donations, RWJF would have donated any money to any charity, much less the exact sums of money donated here to the exact same charities. Therefore, the District Court did not clearly err when it held that $324,875 was the proper loss amount for sentencing purposes.

## III.

We review the appropriateness of the District Court's payment schedule in connection with its restitution order for an abuse of discretion. *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir.1999).

■ Warner does not appear to argue that the § 2B1.1 loss amount is not the proper restitution amount in this case. Rather, he argues that the District Court erred in structuring precisely how and when that restitution amount must be paid

off. In setting a schedule for restitution payments, the District Court must consider "the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled . . . projected earnings and other income of the defendant . . . and any financial obligations of the defendant, including obligations to dependents." 18 U.S.C. § 3664(f)(2). A court may "aim high" in structuring a payment plan, and as long as it creates a plan with which the defendant can "realistically" comply, it acts within its wide discretion. *United States v. Hunter*, 52 F.3d 489, 494 (3d Cir.1995). Further, the court need not make "such precise findings regarding a defendant's income and expenses as often occurs in matrimonial litigation." *Id.* at 494 n. 2.

Before imposing restitution, the District Court indicated that it had reviewed the Pre–Sentence Report (PSR). App. A225. The PSR reveals that Warner has $50,100 in cash, PSR ¶ 69, and owns two pieces of property, PSR ¶ 69, one of which he rejected an offer to sell for $205,000, App. A120. And Warner is not unable to earn a living. He has undergraduate and graduate degrees, PSR ¶ 62, at one point held a white-collar financial job paying $46,000 per year, PSR ¶¶ 63–68, and may be able to earn money while incarcerated, PSR ¶ 74. The District Court recited some of these same facts at sentencing. *See, e.g.,* App. A228–29.

True, Warner is not without expenses. PSR ¶ 69. But we cannot say that the District Court abused its wide discretion—

2. We have explained that "but for the fraud" means "had the defendant refrained from the conduct that gave rise to the fraud," not "had the defendant engaged in such conduct but did so lawfully (rather than fraudulently)." *See United States v. Neadle*, 72 F.3d 1104, 1109–11 (3d Cir.1996) (loss caused by insurance fraud measured against what would have happened had defendant never entered insurance business, rather than what would have happened had defendant entered insurance business and behaved lawfully) (interpreting provisions materially identical to 2002 Guidelines §§ 1B1.3(a)(1) and 2B1.1). Thus, the appropriate baseline here is the scenario where Warner never solicited employee donors, fronted money, and made donations in the first place.

even if it did "aim high"—in finding that Warner could use his current assets to pay his expenses during incarceration and then use his proven ability to obtain gainful employment to continue paying those expenses while simultaneously meeting his restitution obligations after he is released. That is, we cannot say that the District Court imposed a schedule with which Warner has no realistic hope of complying.

## IV.

For the reasons articulated above, we will affirm the District Court's judgment.