**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1044
_____

UNITED STATES OF AMERICA

v.

ROSE UMANA,
                              Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 1-14-cr-00151-001)
District Judge:  Honorable Sylvia H. Rambo

_____

Argued September 27, 2017

Before:  AMBRO and KRAUSE, Circuit Judges, and CONTI, District Judge.[*]

(Opinion Filed: November 2, 2017)

Jeremy B. Gordon
Brandon C. Sample   [ARGUED]
Jeremy Gordon
Suite 106
1848 Lone Star Road
Mansfield, TX 76063

      *Counsel for Appellant*

_____

[*] Honorable Joy Flowers Conti, Chief District Judge for the United States District Court for the Western District of Pennsylvania, sitting by designation.

Stephen R. Cerutti, II    [ARGUED]
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

       *Counsel for Appellee*

————

OPINION[**]

—————

KRAUSE, *Circuit Judge*

Rose Umana challenges the amount of restitution ordered in her criminal judgment after her conviction for health care fraud offenses. For the following reasons, we conclude that her challenges are unpersuasive, and we will affirm the District Court's judgment.

## I.    Background

Umana was charged with several offenses related to health care fraud in connection with her operation of Vision Healthcare Services, Inc. ("Vision"), a medical staffing company and homecare services provider that was approved to receive Medicaid compensation. She eventually pleaded guilty to one count of making false statements or using false writings under 18 U.S.C. § 1035(a)(2); one count of identity theft in relation

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

to the 18 U.S.C. § 1035(a)(2) violation; and one count of engaging in monetary transactions using criminally derived property in violation of 18 U.S.C. § 1957.[1]

The Government sought restitution for the Pennsylvania Medical Assistance Program ("Medicaid"), the victim of the crimes. The Government derived Medicaid's total loss amount, which forms the basis for the restitution order, from two separate investigations, one by the Pennsylvania Department of Human Services Bureau of Financial Obligations ("the BFO audit"), supporting a $674,996.31 loss, and one by Medicare Fraud Control Unit ("the MFCU audit"), supporting a $441,806.12 loss. As a result of these calculations, a total restitution figure of $1,116,802.43 was included in the Probation Office's presentence investigation report ("PSR").

Umana objected to this restitution figure on two grounds. Through her expert, David H. Glusman, Umana argued, first, that the Government misreported the amount actually calculated in the BFO audit by $9,361.27, and, second, that it improperly included Medicaid payments for legitimate services provided to Vision clients totaling $115,837.00 in relation to the BFO audit and $228,399.03 in relation to the MFCU audit.

At the hearing on these objections, counsel for the Government explained that the Government did not dispute the "change figures" related to the BFO audit. Appendix ("App.") 56. That is, the Government agreed that $9,361.27 and $115,837.00 should not have been included in the restitution calculation, and stated at one point that it was "not

---

[1] Among other things, her plea agreement included the following provision: "[w]ith respect to the application of the Sentencing Guidelines to [Umana's] conduct, the parties agree to recommend that the amount of loss attributable to [Umana] is more than $1,000,000 and less than $2,500,000." Plea Agreement 10, ¶ 13.

3

disputing those amounts proposed by the Defendant for purposes of the BFO audit," App. 61-62. However, the Government did dispute Umana's proposed $228,399.03 reduction in relation to the MFCU audit, and it substantiated that amount through, among other things, the testimony of two witnesses: Jennifer Snerr, an MFCU supervisory special agent, who testified about timesheets for services for the patients and Umana's falsification of employee records and fabrication of documents; and Carol Palinkas, a fraud auditor with the Medicaid Fraud Control Section, who testified about the documentation requirements and her analysis of the claims submitted monthly for the patients in the relevant time period.

The Government also argued that the loss amount for which it advocated was conservative given that the MFCU audit focused on the claims of six patients over a finite period whereas Umana had approximately 150 clients during that time and had been in business since 2006. While Umana's counsel secured from Snerr on cross-examination the admissions that "of that 150, [she] limited [her] review in the criminal sense of those 6 cases you testified about," and that she "d[id]n't have any information here today that any of the other 150 cases have any fraudulent billings or any issues with respect to fraud," App. 70, Snerr also affirmed that there were "additional clients identified during the BFO audit . . . with additional billing issues." App. 87.

After further briefing,[2] the District Court overruled Umana's objections and ruled that Umana owed the amount requested by the Government.[3] The District Court concluded that the Government had met its burden to show the amount of loss, and Umana had not shown that she was entitled to any offset. The District Court further noted that "based on the evidence presented during the loss hearings and the pervasiveness of the fraud, the loss figure as calculated by the Government understates the total actual loss." App. 16. The District Court then stated that, "although some small amount of the services provided with regard to the six patients may have been reimbursable . . . , [Umana] is not entitled to a credit against the restitution amount due to the understatement of the loss." App. 16. Thus, in Umana's criminal judgment, the District Court included an order of $1,184,224.67 in restitution under the Mandatory Victims Restitution Act of 1996, 18 U.S.C. §§ 3613A, 3663A ("MVRA"). This appeal followed.

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We "review a restitution

---

[2] Umana proposed that the entire restitution amount be reduced by 52% based on the problems that Glusman found in the calculation of the amount related to the MFCU audit. The District Court concluded "[s]uch a reduction is mere speculation, not supported by any evidence, and would be counter to the court's finding that the total loss in this case has been understated." App. 19. That ruling is not at issue on appeal.

[3] The restitution amount included an additional $192.389.51 that the Government requested for the first time at the hearing, and that is not contested on appeal.

order under a bifurcated standard: plenary review as to whether restitution is permitted by law, and abuse of discretion as to the appropriateness of the particular award."[4] *United States v. Fallon*, 470 F.3d 542, 548 (3d Cir. 2006) (citation and quotation marks omitted). The District Court's fact-finding is reviewed for clear error, meaning that we consider whether it is "completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *See United States v. Vitillo*, 490 F.3d 314, 330 (3d Cir. 2007) (citation and quotation marks omitted).

---

[4] Given the stipulation and waiver in her plea agreement, Umana's appeal is necessarily limited to the amount of the restitution order and not her offense level under the Sentencing Guidelines. Plea Agreement 10, ¶ 13; Transcript of Guilty Plea at 6:16-20, 8:18-23 (ECF No. 104); Recording of Oral Argument at 8:35-38 (17-1044USAvUmana.mp3 available at http://www.ca3.uscourts.gov/oral-argument-recordings); *see United States v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007) ("When a defendant stipulates to a point in a plea agreement, he is not in a position to make . . . arguments [to the contrary].") (citation and quotation marks omitted).

## III.    Discussion

The calculation of restitution is governed by the MVRA, which requires a court to order restitution for the "full amount" of the victim's loss.  18 U.S.C. § 3664(f)(1)(A); *see also United States v. Bryant*, 655 F.3d 232, 254 (3d Cir. 2011).  Where the defendant disputes the proper amount or type of restitution, the district court resolves that dispute "by the preponderance of the evidence."  18 U.S.C. § 3664(e).  As for who bears the burden with regard to that evidence, the MVRA provides that "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government," while "[t]he burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires."  *Id.*

On appeal, Umana challenges the restitution calculation on three grounds.  First, she argues that the District Court used the wrong burden-shifting framework in deciding the restitution amount.  Second, she contends that it legally erred in finding that the amount of loss and restitution understated or underestimated the total loss where the actual loss was measurable.  Third, she maintains that the District Court clearly erred in finding that its loss figure understated the total loss because the Government stipulated to Umana's loss figure for the BFO audit and offered testimony that it had no evidence of fraud beyond that relating to the six consumers in the MFCU audit.

7

### A. Burden-Shifting Framework

Umana's first argument is that the District Court did not use the proper burden-shifting framework in assessing the amount of loss in calculating the restitution award. Specifically, she contends that the District Court improperly placed the ultimate burden on her, rather than the Government, to prove actual loss, and that, pursuant to *United States v. Evans*, 155 F.3d 245, 253 (3d Cir. 1998), and *United States v. Raven*, 39 F.3d 428, 434-35 (3d Cir. 1994), once she cast doubt on the total restitution figure,[5] the District Court should have shifted the burden back to the Government to show that the offsets she claimed for legitimate services should not be credited against the loss.

We see no error in the District Court's allocation of the burden. Neither *Evans* nor *Raven* concerned the calculation of restitution. *Evans* considered loss as it related to a sentencing enhancement, 155 F.3d at 253, and *Raven* dealt with determining the weight of drugs to be attributed to a defendant for sentencing purposes, 39 F.3d at 432, 434-35. This case, however, is governed by *United States v. Bryant,* where we explained, "with respect to an offset for services rendered, . . . that, because '[t]he restitution statute allocates the various burdens of proof among the parties who are best able to satisfy those burdens[,] . . . the defendant should know the value of any [legitimate services] he has already provided to the victim[, and so] . . . the burden should fall on him to argue for a reduction in his restitution order.'" 655 F.3d at 254 (citations omitted).

---

[5] She cites, for instance, the agreed-to $115,837.00 offset for legitimate services related to the BFO audit.

Thus, to the extent that the District Court placed the burden of proof on Umana, it was consistent with our case law. It also was consistent with the MVRA, which puts on "the party designated by the court as justice requires" the "burden of demonstrating such other matters as the court deems appropriate," 18 U.S.C. § 3664(e), which, in our view, includes offsets for any legitimate services that were rendered.

## B. Estimation of Loss

Umana next contends that the District Court erred by finding that the amount of loss and restitution underestimated the total loss where the true loss was measurable.

We have held that a "loss calculation should represent the fraud victim's actual loss," and that a district court cannot rely on an alternative estimate where the loss is measurable. *See United States v. Dickler*, 64 F.3d 818, 826 (3d Cir. 1995). Here, however, the District Court did not rely on something different than the actual loss amount. Indeed, it based the restitution award on the evidence that the Government presented in support of the PSR and at the hearing and its determination that Umana did not present credible evidence to meet her burden to show that she was entitled to any offsets to, or credits against, that loss.

We review that determination for clear error and find none. The District Court concluded that the Government met its initial burden of establishing the amount of loss and that Umana's evidence was insufficient to show that legitimate services were rendered to offset the amount. In so concluding, the District Court accepted the Government's witness testimony as reliable and noted that the timesheets and nursing notes reviewed by the witnesses showed gross inadequacies and fraud. In determining

that Umana was not entitled to any offset for the value of legitimate services provided to her patients, the District Court observed, *inter alia*, that although Glusman identified what he believed were legitimate services, Umana's documentation was unreliable. In view of the evidence, we cannot say that its determination was "completely devoid of a credible evidentiary basis." *See Vitillo*, 490 F.3d at 330 (quotation marks and citation omitted).

### C. Underestimation of Loss

Finally, Umana contends that the District Court clearly erred in finding that the loss figure underestimated the total loss because the Government allegedly (1) stipulated to Umana's loss figure for the BFO audit, and (2) conceded, through Snerr's testimony, that it had no evidence of fraud beyond that relating to the six patients whose files were reviewed in the MFCU audit.

As a threshold matter, it is not clear that the District Court relied on a finding that the loss figure underestimated the total loss. Although it opined that "some small amount of the services provided with regard to the six patients may have been reimbursable . . . , [Umana] is not entitled to a credit against the restitution amount due to the understatement of the loss," App. 18. Moreover, the District Court made this statement after having already rejected Umana's claim for a credit because her documentation was "almost entirely unreliable," App. 16.

Even if the District Court did rely on such a finding, however, there is no basis for reversal or remand on this record, as we see no merit in either of Umana's arguments. First, she asserts that the loss amount could not have been an underestimation given the

Government counsel's statement that the Government was "not disputing those amounts proposed by the Defendant for purpose of the BFO audit." App. 61-62. We disagree. In context, and particularly in light of counsel's more specific statements that the Government was not disputing the "change amounts," App. 56-57, the District Court reasonably concluded that the Government's statement meant only that the Government agreed that the initially proposed restitution amount should be reduced by $9,361.27 and $115,837.00. Accordingly, the District Court could consider the degree of fraud found in the BFO audit, in addition to that found in the MFCU audit, to substantiate an understatement or underestimation of loss.

Second, although Snerr testified that she did not have any evidence of fraud in cases beyond the six reviewed in the MFCU audit, she did not state that she had evidence that there was *no fraud*. On the contrary, she testified that there were "additional clients identified during the BFO audit . . . with additional billing issues," App. 87, and described egregious problems with record-keeping discovered in both the MFCU audit and the BFO audit, supporting the notion that the losses associated with MFCU audit were illustrative, not exclusive.

## IV.    Conclusion

For the foregoing reasons, we will affirm the District Court's judgment.

11