**UNITED STATES of America,**

v.

**David E. NAPIER, Appellant.**

No. 01–1698.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a)

Nov. 1, 2001.

Nov. 30, 2001.

Howard J. Bashman, Thomas P. Manning, Buchanan Ingersoll, Philadelphia, PA, Attorneys for Appellant.

Anita D. Eve, Assistant U.S. Attorney, Michael L. Levy, United States Attorney, Robert A. Zauzmer, Assistant United States Attorney, Chief of Appeals Office of United States Attorney, Philadelphia, PA, Attorneys for Appellee.

Before SLOVITER, NYGAARD, and CUDAHY,* Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

David E. Napier appeals from a judgment of sentence pursuant to U.S.S.G. § 2F1.1. Napier, who was indicted in the United States District Court for the Eastern District of Pennsylvania, pleaded guilty to four counts of bank fraud in violation of 18 U.S.C. § 1344. The sentence was appealed to this court and remanded to the District Court for re-sentencing. Napier now appeals the re-sentence. Napier argues that the District Court erred in interpreting this court's mandate on remand by failing to reduce the loss calculation by the appraised value of the property pledged to secure the loan. He also contends that the District Court erred in imposing accrued but unpaid interest in its recalculation of the fraud loss amount. Furthermore, Napier argues that the District Court erred in finding that Great Western Bank ("GWB") suffered a loss as it is, he contends, conclusively presumed to have sustained no loss under state law.

## I.

In June of 1990, Napier borrowed approximately $384,000 from GWB to fund his purchase of property located in Bucks County, Pennsylvania. As part of the loan application, GWB had a licensed real estate appraiser prepare an appraisal valuation of the property Napier planned to purchase. The lender's appraisal valued the property at $480,000. After making

* Hon. Richard D. Cudahy, United States Court of Appeals for the Seventh Circuit, sitting by designation.

only five payments, Napier defaulted on the loan and in January of 1991, GWB began foreclosure proceedings. The property was purchased at a sheriff's sale in April of 1995 by GWB, the sole bidder, for $305,000. In October of 1997, Napier pleaded guilty to four counts of bank fraud in violation of 18 U.S.C. § 1344.

U.S.S.G. § 2F1.1 provides a base offense level of six for fraud. It further provides offense level enhancements given in proportion to the magnitude of the "loss." "Loss" is defined as the "amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan." U.S.S.G. § 2F1.1, cmt. n. 8(b). At Napier's original sentencing hearing, the District Court based its determination of GWB's "loss" on the forced sale price, $305,000, finding that his total offense level was sixteen and that he was subject to a sentencing range between twenty-seven and thirty-three months imprisonment. The District Court sentenced Napier to a term of thirty months imprisonment, five years supervised release, ordered him to pay a special assessment of $200, and restitution totaling $16,000 ($14,000 to GWB and $2,000 to another lender for a fraudulent car loan).

He appealed from the judgment of sentence. This court remanded the case to allow the District Court to recalculate the "loss" sustained by GWB in light of this court's decision in *United States v. Sharma*, 190 F.3d 220 (3d Cir.1999). In recalculating the fraud loss amount on remand, the District Court found no reason to rely on the appraisal value, given that an appraisal is simply an estimate. Instead, the District Court determined that GWB's subsequent sale of the property one month following its purchase to EMC Mortgage Company ("EMC") for $307,500 was a more reliable indication of the property's fair market value. The District Court also included unpaid interest lost to GWB, although the government had not argued this issue at the original sentencing hearing. The new fraud loss amount resulted in an increased offense level of seventeen and sentencing range between thirty and thirty-seven months imprisonment. Because the court was reluctant to increase Napier's already completed sentence, it reimposed the original sentence. Napier has completed serving his prison sentence and is currently serving the supervised release portion of his sentence. He filed a timely appeal from the District Court's reimposition of his sentence. He seeks a ruling that GWB sustained no loss in order to reduce the amount of restitution he has been ordered to pay to GWB's successor, and he seeks a ruling that he served an unlawfully long prison sentence so that he can persuade the District Court to reduce his term of supervised release.

## II.

Whether the District Court Erred in Using the Market Value of Napier's Property Instead of the Appraisal Value in Recalculating the Fraud Loss Amount.

 The appropriate standard of review of a district court's decision regarding the interpretation of the Sentencing Guidelines, including what constitutes "loss," is plenary. *Sharma*, 190 F.3d at 226. Factual findings, however, are simply reviewed for clear error. *Id.* at 229. Because the District Court's refusal to grant credit for the appraisal value based on the existence of a more reliable value is essentially a fact-based determination, we should review for clear error. *Id.* (finding that the district court's decision to deny credit was entitled to deference).

Napier asserts that this court's opinion and judgment deciding his prior appeal ordered the District Court to re-sentence him using the appraisal value to calculate loss in accordance with *Sharma*. In Napier's prior appeal, we ordered: "In *Sharma*, we held that failure to use the appraisal value was an error.... Thus, we believe it is appropriate to remand this matter for reconsideration in light of *Sharma*." App. at 177a 78a. Napier misconstrues our mandate, which was to reconsider Napier's case in light of *Sharma*. We did not direct the district court to recalculate the fraud loss amount using the appraisal value. What we stated was: "The government ... recommends that we remand since the District Court did not have the benefit of *Sharma* when it sentenced Napier. We agree." *Id.* If we had intended simply that the appraisal value be substituted for the forced sale price, it would not have been necessary to remand. Instead, the remand allowed the district court to reconsider this issue in light of *Sharma*. Thus, we reject Napier's argument that the District Court here ignored or thwarted our mandate.

We turn therefore to our opinion in *Sharma*. In that case, we held that the district court improperly credited Sharma only $40,000 for property that had been appraised at $80,000. 190 F.3d at 229. In reversing, we reasoned that because the bank eventually was successful in its suit to obtain the parcel of land, Sharma was entitled to a credit for the full value of the land less the bank's expenses in the litigation to acquire title. *Id.* In this case, the District Court found *Sharma* did not "stand for the proposition that an appraisal value should always be used in preference to other, perhaps more reliable, valuations of property." *United States v. Napier*, No. 97–214, 2001 WL 33569, at *2 (E.D.Pa. Jan.11, 2001). It is not disputed that Napier is entitled to the full value of the property; the issue instead is what is the most reliable value of the property.

Napier argues that the appraisal value of the property at $480,000 is the most reliable valuation of the property. The District Court found the $307,500 valuation to be most reliable as it "represents the result of an arm's length transaction between sophisticated parties." *Napier*, 2001 WL 33569, at *2. It reasoned: "Such valuations of property, if available, should be used in preference to appraisals, which are, by definition, merely estimates of what property will cost in an arm's length transaction." *Id.*

■ Napier argues, however, that despite the District Court's assertions that GWB's subsequent sale of the property to a third party was "an arm's length transaction between sophisticated parties," the District Court record is devoid of evidence that any subsequent purchaser was a true arm's length purchaser who paid fair market value. The government bears the burden to prove by a preponderance of the evidence the facts in support of a sentence enhancement. *United States v. Evans*, 155 F.3d 245, 253 (3d Cir.1998). Napier argues that the information on subsequent sale prices that the government presented to the District Court on remand was supplied by letter to the judge's chambers rather than by a filing with the clerk's office and is not included in the record on appeal. However, he does not dispute that GWB purchased the property in 1995 at a sheriff's sale for $305,000 and sold the property to EMC one month later for $307,500, although he questions whether the subsequent sale to a commercial seller of real estate was an arm's length transaction. The District Court was satisfied that the market had declined in the period following the appraisal, as the purchaser to

whom the bank had sold the property then resold it a few years later for approximately the same price. Admittedly, there does not seem to be much evidence on the record as to value, but the government proved to the District Court's satisfaction that the $307,500 value was more reliable than the appraised value determined more than five years prior to the discovery of the fraud. We have no basis to hold that the District Court's decision was clearly erroneous.

Whether the District Court Improperly Included Unpaid Interest in Calculating "Loss," Considering the Government Failed to Raise this Issue at the Original Sentencing Hearing.

■ Napier argues that because the government failed to seek the inclusion of unpaid interest at the original sentencing hearing, it is barred from attempting such an argument on remand. The United States Sentencing Guidelines section 2F1.1 comment 8 provides that loss "does not ... include interest the victim could have earned on such funds had the offense not occurred." In *Sharma*, we held that this exclusion of interest from the calculation of loss applied to "opportunity cost," the interest a bank could have earned had it not made the loan in question, but that "bargained-for interest," interest for which the debtor has bargained and is contractually obligated to pay the bank, should be included. *Sharma*, 190 F.3d at 227–28. The District Court applied Sharma in including the bargained-for interest in the calculation of loss, rejecting Napier's objection that the government failed to raise this issue at the original sentencing hearing.

Napier's argument is consistent with our precedent that the government should not be allowed to take a "second bite at the apple." *United States v. Dickler*, 64 F.3d 818, 832 (3d Cir.1995). In *Dickler*, we

held: "[W]here the government has the burden of production and persuasion as it does on issues like enhancement of the offense level under § 2F1.1 based on the victim's loss, its case should ordinarily have to stand or fall on the record it makes the first time around." *Id. See also United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C.Cir.1995) (remanding for re-sentencing on the existing record where government failed to sustain its burden of proving loss under § 2F1.1); *United States v. Parker*, 30 F.3d 542, 553–54 (4th Cir.1994) (no new evidence permitted on re-sentencing where prosecution had failed to introduce sufficient evidence that offense took place within 1000 feet of a "playground" within the meaning of the statute).

In response, the government argues that we need not reach that issue because neither Napier's sentence nor the amount of restitution following the remand was affected. Careful examination shows the government is correct.

The District Court in the initial sentencing found that the fraud loss amount was $144,183, using the $305,000 property value. Consequently, Napier was sentenced to 30 months in prison, five years supervised release, and ordered to pay restitution totaling $16,000. When the District Court included the "bargained-for" interest in calculating the fraud loss amount on remand it raised that amount to $272,130. However, the District Court did not impose a harsher sentence on Napier due to the increased fraud loss amount. Instead it imposed the same sentence as was imposed at the initial proceeding, including the same amount of restitution Napier was ordered to pay. The fraud loss amount using the $307,500 property value but excluding the "bargained-for interest" is $141,683. Therefore, even if the District Court on remand had not included the bargained-for interest, the fraud loss

amount would have placed Napier in the same enhancement level as the initial sentence. Napier does not argue that the $2,500 difference between the amount the District Court initially calculated to be the fraud loss and the amount yielded by the calculation of loss were the interest excluded and the property value of $307,500 used affected the amount of restitution he was ordered to pay.

**Whether GWB Sustained a Loss for Purposes of the Sentencing Guidelines Where Pennsylvania State Law Provides an Irrebuttable Presumption It Has Been Paid in Full.**

█ Only if Napier succeeds on his contention that GWB sustained no loss will he prevail on appeal. He argues that since GWB failed to file a petition to fix the fair market value six months after the forced sale of the property, it is conclusively presumed to have recovered in full the balance due on the property, including interest, fees, and costs, pursuant to Pennsylvania's Deficiency Judgment Act. Pennsylvania's Deficiency Judgment Act provides:

> Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold.

42 Pa. Cons.Stat. Ann. § 8103(a). Section 8103(d) further provides that a judgment creditor's failure to file a petition to fix the fair market value of the property acquired within six months after receiving title cre-

ates an irrebuttable presumption that the creditor was paid in full.

The District Court held that "[a]lthough Napier offers a creative argument, he fails to explain why this state law should control the determination of loss in a federal criminal action." *Napier*, 2001 WL 33569, at *2 n. 5. We agree. Napier fails to offer any persuasive evidence as to why this court should apply a state civil statute in determining the amount of GWB's sustained loss under a federal criminal statute.

U.S.S.G. § 2F1.1 comment 8(b) provides that the "loss [at issue] is the actual loss to the victim." Actual loss is read as the loss the victim has actually sustained or expects to sustain, not presumptions of loss created by state law. We will affirm the District Court's decision not to apply Pennsylvania state law to section 2F1.1 of the Sentencing Guidelines.

For the reasons set forth, we will affirm the District Court's judgment of sentence.