

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-23-2007

# USA v. Bernard

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4975

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Bernard" (2007). *2007 Decisions.* Paper 1757.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1757

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-4975

———

UNITED STATES OF AMERICA

v.

DAVID BERNARD,
                                    Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-00580)
District Judge: Honorable Petrese B. Tucker

———

Submitted Under Third Circuit LAR 34.1(a)
January 18, 2007

Before: SLOVITER, RENDELL, and CUDAHY,[*] Circuit Judges

(Filed:  January 23, 2007)

OPINION

———

[*]  Hon. Richard D. Cudahy, United States Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

SLOVITER, <u>Circuit Judge</u>.

David Bernard appeals his sentence, claiming (1) that the District Court erred in calculating the amount of loss attributable to him, and (2) that the sentence is unreasonable due to family hardship. He also claims that the District Court erred/abused its discretion in denying his request for a downward departure. Because we write primarily for the parties who are aware of the facts, we will forego setting forth the many details of the crime and will set forth only that which we deem necessary to our decision.

## I.

Bernard was charged in four counts of the indictment alleging, inter alia, bank fraud conspiracy. He pled guilty and in an attempt to reduce his prison term, contested the enhancement for the amount of loss that was between $400,000 and $1,000,000. The District Court held a hearing to determine the loss amount attributable to Bernard. The essence of the scheme devised by Bernard was to enlist numerous persons of limited means to open checking accounts in their own names ("account openers"), and to turn over their ATM cards and PIN numbers to "recruiters" (persons working directly with Bernard). The recruiters withdraw non-existent funds from those accounts during the early morning hours when there was no electronic connection between the ATM machines and the banks. Some account openers and recruiters used starter checks on the accounts opened as part of the scheme to make purchases; the worthless checks from closed or underfunded accounts were deposited to inflate the balance of the scheme accounts.

At the hearing, the Government presented three witnesses and significant documentary evidence in the form of bank records. One witness, Postal Inspector Robert Bankhead, detailed his investigation into the scheme. He testified that the bank records showed a common pattern of activity and that he interviewed approximately thirty account openers who each told him that one or two recruiters directed him or her to open an account, obtain an ATM card and PIN number, and turn them over to the recruiters. Inspector Bankhead identified Bernard and five other co-defendants as those who recruited account openers, but who had not opened fraudulent accounts themselves. The bases of his identifications were the descriptions provided by the accounts openers and his review of surveillance tapes and photographs of persons, including Bernard, using ATM machines at Wawa food markets in the middle of the night.

Inspector Bankhead also provided detailed information about two motivational meetings that Bernard held at different hotels, at which he spoke to the recruiters and account openers, reporting that the scheme had a good year and urging further participation.

Cynthia Fusco, who was the auditor who examined the records of the 248 fraudulent bank accounts charged in the indictment, testified that 214 out of 241 accounts, representing $692,547.83 in intended loss or 93% of the total intended loss, were opened by the same person or persons.

The Government also presented the testimony of a cooperating co-defendant,

3

Lamont Booker, who testified as to the details of the scheme. Booker testified that Bernard paid recruiters a set amount depending upon the type of ATM card obtained. He also testified that Bernard held several hotel meetings attended by Booker and the other co-defendants in order to discuss the success of the scheme, and that they would telephone one another in the middle of the night to tip each other off as to which MAC machine was not able to communicate with the bank.[1]

The PSR calculated that Bernard was accountable for an intended loss of $698,196.69. At the conclusion of the hearing, the District Court found that the Government proved Bernard was a leader of the venture, that he was trafficking in unauthorized access devices, and that he should be responsible for an amount of fraud loss in excess of $400,000. It denied Bernard's motion for a downward departure due to family hardship. The District Court sentenced Bernard to 63 months, which was at the top of the advisory guidelines range. Bernard appeals.

We have jurisdiction to review Bernard's sentence under 18 U.S.C. § 3742 (2006). We review the District Court's factual findings concerning the amount of loss for clear error. United States v. Napier, 273 F.3d 276, 278 (3d Cir. 2001). If we conclude that the District Court denied Bernard's request for downward departure because it believed that it

---

[1] Booker also testified that the amount of loss charged by the Government was "[t]oo low" because the indictment understated the duration of the scheme by approximately two years, and because it did not state anything about two other defrauded banks. App. at 188.

4

lacked the legal authority to do so, then we would exercise plenary review to determine whether the District Court's understanding of the law was correct. United States v. Cooper, 437 F.3d 324, 332 (3d Cir. 2006); United States v. Stevens, 223 F.3d 239, 247 (3d Cir. 2000). Finally, we review a sentence for unreasonableness. United States v. Booker, 543 U.S. 220, 261 (2005).

## II.

Bernard argues that the District Court should have calculated the loss attributable to him based on his concession that he was directly responsible for, at most, only approximately $150,000 to $200,000 of loss, not $400,000. He argues that each co-defendant acted independently of each other with no central control, and that only co-defendant Booker worked and shared profits with him. He also argues that there was no proof that the other co-defendants acted with him to defraud the banks and notes that there was no testimony that all of the losses generated were in furtherance of the jointly undertaken activity.

The Government responds that the testimony of Inspector Bankhead, the auditor, Fusco, and the bank records are proof that Bernard and the co-defendants generated more than $400,000 in intended loss. Fusco's testimony that accounts representing in excess of $692,000 in intended loss were opened by the same person or persons points to joint activity. The Government also points to Booker's testimony that Bernard paid the other co-defendants for recruiting account openers, which payment was conditioned upon the account openers turning over their ATM cards and PIN numbers, and that Bernard held

5

several hotel meetings attended by Booker and the other co-defendants in order to discuss the scheme.

We have held that when assessing loss attributable to an individual conspirator, a district court must consider whether the loss resulting from the actions of co-conspirators was (1) "in furtherance of the . . . jointly-undertaken . . . activity"; (2) "within the scope of the defendant's agreement"; and (3) "reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake." United States v. Collado, 975 F.2d 985, 995 (3d Cir. 1992) (quoting U.S.S.G. § 1B1.3, application note 1); United States v. Evans, 155 F.3d 245, 254 (3d Cir. 1998).

In United States v. Duliga, 204 F.3d 97 (3d Cir. 2000), the defendant argued that the district court should have limited the attribution of loss to his own efforts rather than that of the entire telemarketing conspiracy. 204 F.3d at 98, 100. We rejected that argument because: (1) the goal was to defraud as many people as possible, especially because all of the telemarketers were aware of the fraud; (2) the defendant had a stake in the venture because he received salary and commissions; (3) the defendant was one of the top three telemarketers and considered essential when the scheme changed headquarters from Florida to New Jersey; and (4) a daily tally was kept of the fraudulent fees obtained.

We recognized that the district court "did not necessarily undertake a searching and individualized inquiry before attributing the entire amount of loss . . . to [the defendant,]" but held that "the attribution of that loss is firmly supported by the record . .

6

. . ." id. at 101 n.2; see also United States v. Brennan, 326 F.3d 176, 196 (3d Cir. 2003) (affirming attribution of loss determination when "the [d]istrict [c]ourt did not rely solely on the pre-sentence investigation report but rather made its own finding that the [witnesses'] testimony . . . was credible[,]" . . . which was "totally collaborated by documents . . .").

In this case, the District Court did not accept the presentence report's finding of attribution of loss without further explanation. Instead, the Court heard testimony and considered other documentary evidence at the sentencing hearing before it found the Government proved the intended loss attributable to Bernard was in excess of $400,000. We conclude that here, as in Duliga and Brennan, the attribution of loss was supported by the record, and the Court's factual finding concerning the amount of loss was not clearly erroneous.

### III.

We turn to the Government's argument that this court does not have jurisdiction to review the District Court's denial of Bernard's request for a downward departure. The Supreme Court has held that the courts of appeals have jurisdiction to review the denial of a downward departure if the district court erroneously believed that it did not have the authority to grant the motion. United States v. Ruiz, 536 U.S. 622, 626-28 (2002); see also Cooper, 437 F.3d at 332. On the other hand, if the District Court understood that it had discretion to consider the motion for downward departure and exercised that discretion in denying the motion, then we are without jurisdiction. Ruiz, 536 U.S. at 627

7

(reasoning that every circuit has held 18 U.S.C. § 3742(a) "does *not* authorize a defendant to appeal a sentence where the ground for appeal consists of a claim that the district court abused its discretion in refusing to depart"); Cooper, 437 F.3d at 332; United States v. Mummert, 34 F.3d 201, 205 (3d Cir. 1994). Moreover, a district court need not specifically state "that it has considered and exercised discretion when refusing a defendant's requested downward departure . . . ." United States v. Georgiadis, 933 F.2d 1219, 1222 (3d Cir. 1991).

Here, the record shows that the District Court understood it had discretion to consider Bernard's motion for downward departure, and indeed acknowledged the arguments made by counsel on behalf of Bernard at the hearing and in his sentencing. However, the Court exercised its discretion in denying the request, stating "[u]nfortunately, in all cases where criminal conduct leads to someone going to jail, it does in fact have ramifications beyond the defendant. And this case is not extraordinary or the kind of case where a downward departure would be appropriate." App. at 244. Accordingly, we see no basis to disturb the District Court's exercise of its discretion to deny Bernard's request for a downward departure.

## IV.

Finally, we consider Bernard's argument that the sentence imposed, which was at the top of the advisory Guidelines range of fifty-one to sixty-three months, was

8

unreasonable.[2]  We stated in Cooper that a sentence within the guideline range, as this one

was, is more likely to be "reasonable."  437 F.3d at 331.

The District Court expressly referred to the factors and purposes under § 3553(a),

stating,

> [t]his court has a responsibility to resolve or to formulate a sentence that
> recognizes the seriousness of the offense, recognizes the need for protection of the
> community, recognizes the need for prevention and punishment, and to impose a
> sentence that will, while we cannot insure that similar crimes won't be committed
> in the future, the court can at least insure that the person who sits before them is
> not responsible for similar criminal conduct in the future.

App. at 245.

Furthermore, in explaining the reasons for the sixty-three month sentence, a

sentence within the advisory guideline range, the Court noted Bernard's lead role in the

conspiracy, the duration of the venture, the number of participants and in particular their

vulnerability as the weakest members of the community, and the motivational meetings

held to discuss the success of the venture.  We deem that adequate explanation.

---

[2] The Government suggests that Bernard *might* also be arguing that the District Court erred because it did not discuss the factors under Booker and § 3553(a) with enough substance, and because the Court did not acknowledge all of the purposes of sentencing, in particular, the "parsimony principle" of § 3553(a), which is the need to impose a sentence sufficient, but not greater than necessary.  Bernard never objected during sentencing that the District Court's explanation was inadequate.  See United States v. Couch, 291 F.3d 251, 252-53 (3d Cir. 2002); see also  Fed. R. Crim. P. 52(b) (2006).  For the same reasons set forth above, the District Court did not commit plain error because the record shows that the § 3553(a) factors were given meaningful consideration.

For the reasons set forth above, we will affirm the District Court's judgment of sentence.

10