NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2628
_____

UNITED STATES OF AMERICA

v.

RAFAEL ROMERO
aka known as
RALPH ROMERO

Rafael Romero,
                Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 07-cr-00910-001)
District Judge:  Hon. Joseph A. Greenaway, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
December 16, 2010

Before:  JORDAN, HARDIMAN and VAN ANTWERPEN, *Circuit Judges.*

(Filed  December 21, 2010 )
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

      Rafael Romero appeals from a judgment entered by the United States District

Court for the District of New Jersey imposing a sentence of 150 months' imprisonment

following his conviction for wire and mail fraud. Romero argues that the District Court erred at sentencing by finding that the amount of loss from Romero's fraud exceeded one million dollars, that some of Romero's victims were vulnerable, and that Romero abused a position of trust. Romero also challenges the District Court's decision that a two-level upward departure was appropriate under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 5K2.3 for causing extreme psychological injury. We will affirm.

## I.      Background

From 1998 to 2006, Romero held himself out to be an astute investment advisor who could guarantee risk-free, high rates of return. During that time, he convinced dozens of victims to give him money to invest from their retirement savings, cash advance lines on their credit cards, equity in their homes, and brokerage accounts. Instead of faithfully investing his victims' money, Romero spent the vast majority of it on gambling, drinking, renting cars, going to night clubs, and, as the District Court found, generally "letting the good times roll."

A jury convicted Romero on ten counts of wire fraud under 18 U.S.C. § 1343 and one count of mail fraud under 18 U.S.C. § 1341. At Romero's sentencing hearing, the District Court considered evidence that established the following points: bank and brokerage records showed that Romero received over two million dollars from victims; checks from Romero to victims showed that he may have returned up to $780,000 to his

2

victims;[1] an estimate by a special agent of the Federal Bureau of Investigation put collective net losses of Romero's victims at $1,884,874.25; at least one victim invested with Romero because of a "false sense of trust and camaraderie" based on a shared nationality, youth, and past; certain older victims could no longer retire after losing all of their retirement savings to Romero; several victims faced financial insolvency because of Romero's fraud; one victim suffered continued insomnia and mood problems after losing his family's money to Romero's scheme; and one victim was so sickened by losing her family's money that she had to seek medical treatment and suffered depression.

Based on that evidence, the District Court sentenced Romero to 150 months' imprisonment, a special assessment of $1,100, and restitution in the amount of $1,884,874.25. When determining Romero's sentence, the District Court applied a 16-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(I) because the amount of loss from Romero's fraud exceeded one million dollars, a two-level enhancement pursuant to U.S.S.G. § 3A1.1(b)(1) because at least one of Romero's victims was a vulnerable victim, and a two-level enhancement pursuant to U.S.S.G. § 3B1.3 because Romero abused a position of trust to conduct his fraud. In addition to those sentencing enhancements, the District Court agreed with the government that a two-level upward

---

[1] Romero asserted that he returned $780,000 to his investors. However, many of the checks he wrote to investors bounced, so the exact amount returned to investors was not established.

departure was appropriate under § 5K2.3 because Romero's offense caused extreme psychological injury to his victims.[2] Romero timely appealed.

## II. Standard of Review

We review for clear error the District Court's factual findings regarding the amount of loss and its application of the vulnerable victim enhancement. *United States v. Brennan*, 326 F.3d 176, 194 (3d Cir. 2003) (District Court's finding regarding amount of loss is reviewed for clear error); *United States v. Monostra*, 125 F.3d 183, 188 (3d Cir. 1997) (application of the vulnerable victim enhancement to factual findings is reviewed for clear error). While we also review the District Court's determination of whether the defendant abused a position of trust for clear error, we review *de novo* the District Court's determination that the defendant occupied a position of trust under U.S.S.G. §3B1.3. *United States v. Iannone*, 184 F.3d 214, 222 (3d Cir. 1999). We review for abuse of discretion the District Court's decision to depart upward from the applicable guideline range. *See Koon v. United States*, 518 U.S. 81, 99-100 (1996); *Iannone*, 184 F.3d at 225.

---

[2] That departure added 15 months to Romero's Guidelines range. The District Court also applied a four-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(B) because Romero defrauded more than 50 victims. Romero does not challenge that enhancement.

## III. Discussion[3]

We find no clear error or abuse of discretion in the District Court's sentencing of Romero. First, given the uncertainty that Romero returned $780,000 to his victims, the District Court did not clearly err in finding the loss to exceed one million dollars. The Court only had to make a reasonable estimate of the loss. *See* U.S.S.G. § 2F1.1 cmt. n.3(C) (2008) ("The court need only make a reasonable estimate of the loss."). The District Court heard testimony from a special agent of the FBI that the loss to victims exceeded one million dollars even accounting for the return of $780,000 to the victims. It was not clear error to credit that testimony. *United States v. Napier*, 273 F.3d 276, 279-80 (3d Cir. 2001) (finding no clear error where, in the face of conflicting evidence regarding the amount of loss, the District Court found the Government's evidence more reliable).

Second, the District Court did not clearly err in finding that certain investors were vulnerable victims. The Sentencing Guidelines provide that "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels." U.S.S.G. § 3A1.1(b)(1). If one of Romero's victims was vulnerable based on his or her individual characteristics, the enhancement could properly be applied. *See United States v. Zats*, 298 F.3d 182, 188-90 (3d Cir. 2002). The District Court rejected the government's broad argument that all of Romero's Hispanic victims were vulnerable to

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

5

Romero's fraud. It instead found that one of Romero's victims, Ms. Pajaro, was vulnerable because she shared her nationality, youth, and past with Romero, which induced her to invest her money with him. That was not clear error. *See Iannone*, 184 F.3d at 220 ("[T]he court did not base its finding of [the victim's] vulnerability merely on broad, unsupported generalizations ... . [The victim] testified at length at the sentencing hearing, and, based on his testimony, the court made express, specific findings as to his particular susceptibility ... .").

Third, the District Court did not err in holding that Romero occupied and abused a position of trust.

> We consider three factors in determining whether a defendant occupies a position of trust for the purposes of § 3B1.3: (1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority which the position vests in the defendant vis-a-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position.

*Id.* at 223 (internal quotations omitted). The District Court correctly concluded that Romero occupied a position of trust. Romero's victims turned over investment control of significant financial assets to him; they relied on his integrity to invest their money; and they could not easily detect his fraud because of the discretion he exercised when managing their money. Romero then abused that position of trust to accomplish his fraud, using his managerial position to divert his victims' money to himself for personal gain. *Id.* at 224-25 (finding that Iannone's position as head of the company in which the victims invested allowed him to conceal use of the victims' investment money).

6

Last, the District Court did not abuse its discretion when departing upward from the Sentencing Guideline range for Romero pursuant to § 5K2.3. "If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range." U.S.S.G. § 5K2.3. Romero's fraudulent scheme caused victims to suffer emotional trauma sufficient to justify the upward departure in this case. *See United States v. Jarvis*, 258 F.3d 235, 241 (3d Cir. 2001) (affirming departure when victims had to take depression medication and see a mental health professional). The record in this case is replete with evidence of that trauma. Victims testified that they suffered depression, had to seek medical attention, stopped eating, and suffered from continuing insomnia – all as a result of the extreme financial hardship caused by Romero's actions. The District Court was within its discretion in concluding that the extent of those injuries placed Romero's crimes outside the heartland of wire and mail fraud cases addressed in the Guidelines.

## IV. Conclusion

For the foregoing reasons, we will affirm the sentence imposed by the District Court.