**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2169
_____

UNITED STATES OF AMERICA

v.

VINCENT K. GRAHAM,
                                   Appellant


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-09-cr-00318-001
District Judge: The Honorable Lawrence F. Stengel


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 28, 2012

Before: SMITH and FISHER, *Circuit Judges*
and RAKOFF, *Senior District Judge*[*]

(Filed: July 2, 2012 )


_____


OPINION

_____

[*] The Honorable Jed S. Rakoff, United States Senior District Judge for the United States District Court, Southern District of New York, sitting by designation.

1

SMITH, *Circuit Judge.*

Vincent Graham was convicted of — and sentenced for — various crimes related to a counterfeit check scheme. Graham appeals his conviction, arguing that the District Court erred in admitting certain evidence at his trial under Federal Rule of Evidence 404(b), that much of the 404(b) evidence contained inadmissible hearsay, and that the government's evidence as to an aggravated identity theft count was insufficient as a matter of law. Graham also appeals his sentence, arguing that the District Court erred in calculating his Guidelines Offense Level and failed to consider his alleged post-conduct rehabilitation. We conclude that there was no error and will affirm.[1]

I.

The Indictment alleged that, on more than 150 occasions, Graham purchased merchandise from certain retail stores using counterfeit checks.[2] The Indictment further averred that although most of the routing numbers on the counterfeit checks corresponded to actual banks, the payors' names and addresses were often fictitious and that Graham generally presented counterfeit driver's licenses or other false identification documents in an effort to convince the retailers that the checks were valid. The retailers often transmitted information about these checks to Certegy Check Services ("Certegy"), a check verification company, which approved the counterfeit checks because they

---

[1] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

[2] The Indictment, however, alleged only 22 specific instances of Graham uttering counterfeit checks.

appeared to be facially valid. The Indictment alleged that, in total, Graham obtained more than $99,000 worth of merchandise from various retailers through this scheme.

Although most of the payors named on the counterfeit checks were fictitious, one was a real person — Shayne Houston.[3] The Indictment alleged that on March 22, 2007, Graham used a means of identification bearing Shayne Houston's name in furtherance of a wire fraud violation (i.e., Graham uttered both a check and identification bearing Houston's name and actual home address).[4]

Prior to and during trial, Graham objected to the government's offer of evidence that related to crimes and wrongs that, while allegedly committed by Graham, were not specifically alleged in the Indictment. This evidence included: approximately ten copies of Sam's Club membership cards containing Graham's picture with false names and related documents; several allegedly counterfeit checks uttered at Sam's Club by person(s) using these membership cards; a chart containing information as to counterfeit checks that were allegedly uttered by Graham (the "Chart"), which included information about the 22 counterfeit checks specifically alleged in the Indictment and approximately 150 additional counterfeit checks (this chart was compiled by Douglas Ritter, who was the investigating Secret Service Agent, from information provided by Certegy and other check verification companies); and letters from Certegy to Houston regarding five

---

[3] The Indictment refers to Shayne Houston by his initials, "S.H."

[4] The Indictment further charged Graham's codefendant Anthony Gardner with uttering certain counterfeit checks and participating in the check counterfeiting conspiracy with Graham. Gardner pled guilty pursuant to a plea agreement and was sentenced to 18

3

counterfeit checks  (collectively, this is the "Other Acts Evidence").  Graham moved *in limine* to exclude much of the Other Acts Evidence, arguing that the government did not disclose this information until a few days before the start of trial.  The government countered that in August 2009 — more than a year prior to the start of Graham's trial — it produced the Sam's Club documents and most of the underlying documentation supporting the Chart.  The District Court denied Graham's motion, concluding that the government produced the Other Acts Evidence in August 2009, sufficiently in advance of trial, and that it was admissible under Rule 404(b) because it was "competent and relevant evidence" that was offered to prove Graham's "modus operandi" and was "not evidence of unrelated criminal conduct which would tend to simply show bad character." 133a.  The District Court gave the jurors a limiting instruction regarding the Other Acts Evidence, directing them to consider this evidence only for the purposes of, *inter alia*, deciding whether Graham acted with a method of operation and not for whether Graham had a propensity to commit the alleged crimes.  772-73a.

In October 2010, a jury found Graham guilty of: wire fraud, in violation of 18 U.S.C. § 1343 (Count 1); aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and (c)(5) (Count 2); uttering counterfeit checks, in violation of 18 U.S.C. § 513 (Counts 3-22, 28 and 29); and conspiracy, in violation of 18 U.S.C. § 371 (Count 23).  The District Court sentenced Graham to 63 months as to each of Counts 1, 3-22, 28 and 29, and 60 months as to Count 23, all to run concurrently.  The Court further sentenced Graham to 24 months as to Count 2, to run consecutively, for a total term of 87

months' imprisonment and ordered to pay restitution in the amount of $5,697.62.

months' imprisonment.[5]  Graham appealed his conviction and sentence.

## II.

### A.

We review a District Court's decision to admit evidence of other acts under Rule 404(b) for an abuse of discretion.  *See United States v. Butch*, 256 F.3d 171, 175 (3d Cir. 2001).

Rule 404(b) permits the introduction of evidence of other bad acts unless such evidence is offered solely to "prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b); *United States v. Green*, 617 F.3d 233, 244 (3d Cir. 2010).  The "threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character," *Huddleston v. United States*, 485 U.S. 681, 686 (1988), such as intent, plan, knowledge, identity, or absence of mistake or accident.  Fed. R. Evid. 404(b); *Green*, 617 F.3d at 244.  We apply a four-factor standard when determining the admissibility of evidence pursuant to Rule 404(b): (1) a proper evidentiary purpose; (2) relevance under Rule 402; (3) a weighing of the probative value of the evidence against any unfair prejudicial effect under Rule 403; and (4) whether a limiting instruction was given upon request by one of the parties.  *See Butch*, 256 F.3d at 175-76 (citing *United States v. Mastrangelo*, 172 F.3d 288, 294 (3d Cir. 1999)).

---

[5] The court also imposed the following criminal monetary penalties against Graham: an order of restitution in the amount of $112,731.28; a fine in the amount of $2,500.00; and an assessment in the amount of $2,500.00.

Here, the District Court did not abuse its discretion by admitting the Other Acts Evidence. This evidence was probative of, *inter alia*, Graham's intent and plan as to the charged counterfeit check conduct. For example, the evidence that Graham created Sam's Club memberships in the fictitious names of Herbert Adderly, Terrence Alston, Quincy Thomas, and Wayne Woods demonstrated that Graham was the most likely person to have uttered the counterfeit checks in the names of Adderly, Alston, Thomas, and Woods, as charged in Counts 4 and 17-22 of the Indictment. Thus, the government satisfied the first two prongs of the Rule 404(b) analysis.

We are also not persuaded that the admission of the Other Acts Evidence unfairly prejudiced Graham. Evidence is unfairly prejudicial under Rule 403 only if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (quotation marks omitted). The probative strength of the Other Acts Evidence is not a proper basis for exclusion under Rule 403. *See id.* Here, Graham has not demonstrated why the Other Acts Evidence would have an undue tendency to suggest that the jury decide on an improper basis. This is especially so given that the District Court, at Graham's request, gave a limiting instruction regarding the proper use of the Other Acts Evidence. Thus, the government satisfied the final two prongs of the Rule 404(b) analysis.

Accordingly, the District Court did not abuse its discretion in admitting the Other Acts Evidence under Rule 404(b).

B.

We review a district court's admission of alleged hearsay statements for abuse of discretion, but our review is plenary as to the district court's interpretation of the Federal Rules of Evidence. *See United States v. Riley*, 621 F.3d 312, 337 (3d Cir. 2010); *see also United States v. Berrios*, 676 F.3d 118, 125 (3d Cir. 2012). Federal Rule of Evidence 801(c) defines hearsay as a statement that, other than one made by a declarant while testifying at trial, is offered to prove the truth of the matter asserted.

Here, the District Court did not abuse its discretion in admitting certain statements that Graham alleges contain hearsay. First, the letters by Certegy to Houston requesting payment were not hearsay because they were offered to show the impact on Houston and demonstrate why he contacted the police to start an investigation, not for the truth of the matters asserted therein (i.e., that Houston owed money to Certegy). Similarly, the copies of the checks bearing Houston's name, which were attached to the Certegy letters, were offered to demonstrate that they were not genuine checks uttered by Houston, and thus, were not offered to prove the truth of the matters asserted therein. Second, a testifying officer's statement that, prior to arresting Graham, he was responding to a "check fraud in progress," was not hearsay because it was offered to show the impact on the officer and why he was called to the scene. Third, the Chart was not offered to prove the truth of the matters asserted therein — that the listed payors uttered the checks — but instead to prove the opposite, that those checks were counterfeit and were uttered by

7

somebody other than the listed payors.[6]

Accordingly, the District Court did not abuse its discretion.

## C.

For insufficiency of evidence challenges, we must view the evidence in the light most favorable to the government and "sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," but we may not weigh the evidence or determine the credibility of witnesses. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (quotation marks and citation omitted).

Graham argues that the government's evidence was insufficient to establish a conviction for aggravated identity theft (Count 2) because a rational trier of fact could not find beyond a reasonable doubt that Graham knowingly possessed or used the identification of another person when he allegedly uttered the counterfeit check in Houston's name.[7] We are not persuaded.

To prove that a defendant committed aggravated identity theft in violation of 18 U.S.C. § 1028A, the government must demonstrate, *inter alia*, that the defendant "knowingly transfer[red], possess[ed], or use[d], without lawful authority, a *means of*

---

[6] Graham also asserts that a Delaware Police Bulletin, which contained pictures of Graham and statements such as "Fraudulent Check Scam," was hearsay. However, the District Court sustained Graham's hearsay objection to the bulletin, and the court, at Graham's request, directed the government to redact all words from the document, leaving only the photographs. *See* 218-19a; SA84. Thus, Graham's hearsay challenge to the bulletin is moot.

[7] At trial, the District Court denied Graham's motion brought pursuant to Rule 29 for judgment of acquittal as to the aggravated identity theft charge.

*identification* of another person[.]"    18 U.S.C. § 1028A(a)(1) (emphasis added).[8]

"[M]eans of identification," is defined as "any name . . . that may be used, alone or in conjunction with any other information, to identify a specific individual, including . . . [an] address."  18 U.S.C. § 1028(d)(7)(C).

Here, Graham's conviction for aggravated identity theft (Count 2) was supported by sufficient evidence.  At trial, the government introduced a surveillance video from one of the merchant-victims that accepted a counterfeit check bearing Houston's name and actual home address.  The government asserts, and Graham has not disputed, that this video showed a customer — fitting Graham's description — presenting the cashier with a check and an additional document that the cashier inspected and returned to the customer. Moreover, the check bore the handwritten notation "De #" followed by a series of seven numbers, which one could infer to be a Delaware driver's license number (Houston has a Delaware address, though the record is silent as to whether he has a Delaware driver's license, and if so, the number of the license).  39a.  Based on the foregoing, a reasonable jury could infer that the customer in the video provided identification to the cashier bearing Houston's name and address in order to support the counterfeit check containing the same information.[9]  Thus, viewed in a light most favorable to the government, the

---

[8] The government must also prove that the defendant used the identification of another in relation to an enumerated violation, such as wire fraud.  *See* 18 U.S.C. § 1028A(c)(5). Graham has not challenged this aspect of his § 1028A conviction.

[9] We are not persuaded by the cases Graham cites in support of his proposition that a false driver's license bearing the name and address of an actual person is not a "means of identification of another" under § 1028A.  In *United States v. Mitchell*, a case cited by Graham, the Fourth Circuit determined that a false identification bearing a real person's

evidence supports the jury's conclusion that Graham was the customer on the surveillance video, and that he presented both a counterfeit check bearing Houston's name and a means of identification for Houston.[10]

Accordingly, Graham's conviction for aggravated identity theft (Count 2) was supported by sufficient evidence.

### D.

We review a sentencing court's factual determinations as to the amount of loss suffered for plain error. *See United States v. Napier*, 273 F.3d 276, 278 (3d Cir. 2001). We review a sentencing court's application of the factors set forth in 18 U.S.C. § 3553(a) for an abuse of discretion. *See United States v. Jackson*, 523 F.3d 234, 243 (3d Cir. 2008); *United States v. King*, 454 F.3d 187, 194-96 (3d Cir. 2006).

Contrary to Graham's assertions, the District Court did not err by increasing his Guidelines Offense Level based on: (1) evidence presented at trial of purported uncharged loss amounts for victims that were not specifically identified in the Indictment;

---

name, by itself, did not satisfy § 1028A because it did not refer to a specific individual. 518 F.3d 230, 235 (4th Cir. 2008). Here, unlike in *Mitchell*, Graham used both Houston's name and address, thereby referring to a specific individual.

Also, *United States v. Hawes*, another case cited by Graham, is inapposite because there the defendant never appropriated the identity of another. 523 F.3d 245, 251-52 (3d Cir. 2008). Instead, the defendant in *Hawes*, who was a financial advisor, misused his authority to access client accounts and change their addresses in order to steal from those accounts, and thus, we determined that the harm caused was theft of funds, not identity theft. *See id.* at 252.

[10] Graham also argues that there was insufficient evidence that he knew Houston was a real person when he uttered the check bearing Houston's name and address. We are not persuaded because, drawing all inferences in favor of the government, a reasonable jury could infer Graham's knowledge based on the fact that the check contained both

and (2) a determination that there were more than four victims of his offense conduct. The District Court was required to consider *all* relevant conduct involved in the fraudulent scheme, not just the evidence regarding the specific counts of conviction. *See* U.S. Sentencing Guidelines Manual § 1B1.3 (2011). At trial, the government presented, *inter alia*, the Chart listing the counterfeit checks that were allegedly uttered by Graham and testimony from an employee of Certegy who explained the common characteristics shared by the checks listed in the Chart and why he believed those checks were uttered by the same individual (e.g., the counterfeit checks generally had the same routing number, the initial digits in the account numbers were typically the same, and the checks contained similar handwriting). Thus, the District Court did not abuse its discretion by determining — by a preponderance of the evidence, *United States v. Grier*, 475 F.3d 556, 568 (3d Cir. 2007) (en banc) — that Graham's counterfeit check conduct caused losses of approximately $110,000 and that there was a range of 39-40 victims. 892-83a.

Moreover, contrary to Graham's assertions, the record supports that, at sentencing, the District Court considered Graham's alleged post-conduct rehabilitation. In fact, the District Court expressly rejected Graham's claim of post-conduct rehabilitation because he showed no remorse during his sentencing hearing and continued defrauding a car dealership after his arrest. 897-98a. Thus, the court did not err in sentencing Graham.

Accordingly, we will affirm.

---

Houston's name and correct address.

11