NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2655
_____

UNITED STATES OF AMERICA

v.

SUSAN C. KEVRA-SHINER,

Appellant

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 3-14-cr-00257-001)
District Judge: Honorable Malachy E. Mannion

_____

Submitted Under Third Circuit LAR 34.1(a)
June 4, 2018

Before: AMBRO, JORDAN, and VANASKIE, Circuit Judges

(Opinion filed: July 10, 2018)

_____

OPINION[*]

_____

AMBRO, Circuit Judge

Susan Kevra-Shiner was indicted and, following a jury trial, convicted for seven

counts of mail fraud on seven individual consumers under 18 U.S.C. § 1341. Through

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

her company, GK Abstract, Inc. ("GKA"), she sold these seven individuals and sixty-two others title insurance as a purported agent of Stewart Title Guaranty Company, even though it had terminated her authorization to sell its insurance. Her central defense at trial was that she mistakenly believed she was still authorized to sell the policies despite contractually agreeing to the termination. On appeal, she challenges her conviction, the evidence admitted at trial, and her sentence.[1] Because the District Court did not err, we affirm.

Kevra-Shiner raises two arguments for the first time on appeal, which we review for plain error. Fed. R. Crim. P. 52(b). First, she asserts that the indictment, which charged fraud on consumers, was constructively amended after trial to include fraud on both consumers and institutions. She claims the Government requested and the District Court read a jury instruction that included fraud on institutions, but cites neither an explicit request nor an explicit instruction. Instead, Kevra-Shiner relies on the prosecutor's statement during closing argument that she did not pay Stewart Title its standard fees for the insurance policies in dispute—suggesting she was under no illusion that she could still issue those policies. Kevra-Shiner also points to the Court's comment, when instructing the jury that she need not profit from her fraudulent scheme to be liable for mail fraud, that "it so happens that the government does contend that the proof established that persons and institutions were defrauded and that the defendant profited [from] it." App. 57.

---

[1] The District Court had jurisdiction over the criminal proceeding under 18 U.S.C. § 3231, and we have jurisdiction over the appeal under 28 U.S.C. § 1291.

An indictment is constructively amended only if "the evidence and jury instructions at trial modify essential terms of the charged offense" such that "there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged." *United States v. Daraio*, 445 F.3d 253, 259–60 (3d Cir. 2006). Here the indictment listed seven counts of fraud on specific individual consumers. Those seven individuals testified at trial, and the verdict slip completed by the jury foreperson listed the same individuals in the seven counts of mail fraud for which Kevra-Shiner was convicted. Further, in its closing, the Government consistently described the victims of Kevra-Shiner's scheme as "people"—specifically, the homeowners who purchased title insurance from GKA. It is not substantially likely the jury could have convicted Kevra-Shiner for fraud on institutions. Thus the Court did not err, let alone plainly err.[2]

Second, Kevra-Shiner argues for the first time on appeal that the District Court erroneously permitted the Government to admit a certain email as evidence.[3] In it she

---

[2] According to Kevra-Shiner, because the indictment was improperly amended to include fraud on both institutions and consumers, the District Court ought to have given an augmented unanimity instruction to ensure all the jurors agreed on the grounds for her conviction. This argument fails, however, because the indictment was not amended and no juror could have convicted for anything other than mail fraud on the seven consumers named in the indictment and verdict slip. *See United States v. Barel*, 939 F.2d 26, 35 (3d Cir. 1991).

[3] Kevra-Shiner claims she objected in part before the District Court, but because she did not preserve an objection on the record under Federal Rule of Evidence 106, we review for plain error. *See, e.g.*, *United States v. Mitchell*, 365 F.3d 215, 257 (3d Cir. 2004). When the Government moved for the email's admission into evidence, the Court asked if Kevra-Shiner was familiar with the exhibit. App. 25. Her counsel answered, "I don't know how this came about being copied as an e-mail if it was part of a thread. I don't object that she believes this was sent to her, a copy of what she may have seen on a

3

appears to apologize to a Stewart Title employee after the company sued to enjoin her from issuing further policies without authorization. She claims the email was part of a larger chain that Stewart Title could not produce because, per its document retention policies, emails on its servers are automatically deleted after sixty days. She argues that the Court should have denied the lone email's admission altogether under Rule 106 of the Federal Rules of Evidence, which permits counsel to require that evidence submitted by an adversary be complete.

However, to establish plain error, Kevra-Shiner must show the admission of this email "affect[ed] [her] substantial rights." Fed. R. Crim. P. 52(b). In other words, she must show a "reasonable probability of a different outcome absent" its admission. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). She has not made this showing. At trial, her counsel challenged the email's reliability thoroughly when cross-examining the Stewart Title employee who received it. Kevra-Shiner's brief further acknowledges that the recipient could have described its content to the jury even if it were not admitted. And the email was but one piece of evidence, among others, that she knew she lacked authorization to act as Stewart Title's agent: for example, the termination agreement between Stewart Title and GKA, witness testimony that Stewart

---

computer screen. But there may be more." *Id.* At no point did he mention Rule 106. The Government then stated its argument for the email's admission. *Id.* The Court asked Kevra-Shiner's counsel whether he wished to respond, and he replied, "I don't have any response to that, Judge. I will clarify in cross, points I would like to make." *Id.* Thus even assuming counsel initially preserved a Rule 106 objection, *see* Fed. R. Evid. 103(a)(1) (requiring counsel to raise a *specific* objection, or otherwise make the ground for objection apparent in context), he then waived it in favor of cross-examination, *see New York v. Hill*, 528 U.S. 110, 115 (2000) (noting counsel has the last word as to what evidentiary objections to raise).

Title confiscated its materials from GKA's offices, Kevra-Shiner's failure to remit a standard payment to Stewart Title for the policies, and her own deposition testimony in a separate civil case that she knew she lacked authorization. Thus she fails to show a reasonable probability that the email's admission caused prejudice, and there is no plain error.

Kevra-Shiner next challenges the District Court's application of a perjury enhancement and its loss calculation at sentencing. Both matters were preserved. We therefore review the Court's factual determinations in applying the Sentencing Guidelines for clear error and review its legal conclusions *de novo*. *United States v. Miller*, 527 F.3d 54, 75 (3d Cir. 2008); *United States v. Napier*, 273 F.3d 276, 278 (3d Cir. 2001).

Because Judge Kosik, who presided over the trial, was on inactive status and no longer available at sentencing, Judge Mannion determined Kevra-Shiner's sentence. He applied an obstruction-of-justice enhancement for perjury under U.S.S.G. § 3C1.1. Kevra-Shiner argues that a judge who was not present at trial to observe a testifying defendant's demeanor cannot properly impose a perjury enhancement.

It is well established that "a defendant's right to testify does not include a right to commit perjury." *United States v. Dunnigan*, 507 U.S. 87, 96 (1993). "A defendant who testifies under oath at trial commits perjury within § 3C1.1 if he 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Napolitan*, 762 F.3d 297, 312 (3d Cir. 2014) (quoting *Dunnigan*, 507 U.S. at 94). While the defendant's demeanor when testifying may play a role in the § 3C1.1 analysis, we are aware of no

5

binding case law precluding a perjury enhancement if the judge who presided over trial is no longer available to sentence the defendant. Kevra-Shiner cites none. Further, although Judge Mannion had only a cold record to review at sentencing, that record was surely sufficient here. As he noted, there was "overwhelming evidence" that Kevra-Shiner knew she could no longer issue Stewart Title policies. App. 83. She herself testified under oath during a civil deposition that she knew. Yet she took the stand at trial and told the jurors the opposite—a defense they roundly rejected. We find it incredible that Kevra-Shiner's demeanor alone could have led any judge to conclude she had not perjured herself.

Finally, Kevra-Shiner disputes the District Court's loss calculation under U.S.S.G. § 2B1.1, which Judge Mannion based on the aggregate amount her consumer victims paid for title insurance after she was no longer authorized to issue it. According to the Guideline's commentary, "loss is the greater of actual loss or intended loss," and "'actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A). Kevra-Shiner argues it is not clear here that any consumer victim suffered either an actual or intended loss because the record does not show whether Stewart Title might still honor the policies she fraudulently issued. This argument is unsupported by either the record or common sense. Stewart Title employees testified that the policies in question were invalid and legally ineffective. Kevra-Shiner's victims paid for valid, effective title insurance and did not receive it. The District Court did not err by calculating loss as the total amount Kevra-Shiner charged consumers for invalid policies, which was their actual loss.

We thus affirm.